282 So.2d 100

**William O'Neal RHODES**

v.

**STATE.**

**5 Div. 113.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

William O'Neal Rhodes, pro se.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

HARALSON, Supernumerary Circuit Judge.

The appellant was charged and convicted of robbery and sentenced to imprisonment in the penitentiary for ten years, from which judgment of the court he has appealed.

The appellant, an indigent, was represented at the trial by an attorney appointed by the court. The record shows that soon after the arrest of the appellant, the court appointed one attorney on February 9, 1971, to represent him, and on that date a plea of not guilty was entered. It appears that on March 22, 1971, the appointed counsel requested that he be allowed to withdraw from the case because the appellant refused to cooperate, and further, that his request was granted. On the same date, Honorable William D. Latham, an attorney, was appointed to represent him and immediately filed a motion for a continuance, which was granted. On October 12, 1971, appellant, with his counsel present, in open court entered his plea of not guilty on arraignment. On November 1, 1971, counsel filed a second motion for a continuance, upon which the record contains no ruling by the trial court, and the case was tried on November 17, 1971.

When notice of appeal was given in the circuit court, and the affidavit in forma pauperis was filed, the appellant included in the notice the fact that he did not desire the service of an attorney on the appeal. A transcript of the testimony was prepared by the court reporter and filed in the court below, and the appellant filed a brief which in its composition appears to have been prepared by someone more knowledgeable in such activities than the ordinary layman. Along with the brief appears affidavits from appellant and the attorney who represented him on trial. A reply brief to the one filed by the Attorney General is also before the court.

Although no motion to exclude the State's testimony was made at the trial, no affirmative charge was requested, and no motion for a new trial was made by the appellant, the court is of the opinion that it would be well to set out the tendencies of the evidence of the State and appellant.

The State's testimony tends to show that during the early part of the morning of April 26, 1969, the appellant and some other person entered the Holiday Inn near Clanton. They confronted the State's witness Cox, an employee who was on duty in the front office, with a .38-caliber pistol and a sawed-off shotgun. The appellant's accomplice pointed the pistol at Mr. Cox and said, 'this is a holdup.' Shortly thereafter, the appellant, who apparently had come in the back door, appeared with the shotgun and said, 'he's not kidding.' They put tape over his eyes and mouth, tied his hands, and told him not to move or they would blow his brains out. Within a few minutes thereafter Mrs. Ellison, a waitress, reported for work and came in through the kitchen and dining room. She was met by the appellant with the sawed-off shotgun and told 'this is armed robbery.' Her hands were tied with shoe strings, and she and Mr. Cox were taken to a small room in the rear of the building where they were required to lie flat on the floor. They were told not to move or they would have their brains blown out and to be quiet for ten minutes

before they tried to release themselves. In the meantime, Mr. Cox had told the intruders where the money was kept. It appears that some $374.00 was missing after the robbery.

Later on Mr. Cox viewed the appellant while he was in jail and confined within a cell with one other person. The testimony, as to what was said between the jailer and Mr. Cox at the viewing of appellant, was in conflict. The jailer and Mr. Cox maintained that no suggestion was made by either of them with regard to appellant's identity. The cellmate of appellant testified that a suggestion was made by the jailer to Cox as to the identity of the appellant during the viewing.

Appellant's mother, of her own volition, later showed what was to be the alleged picture of appellant to Mr. Cox, and at that time he apparently denied that appellant was involved in the robbery. He admitted this denial on the stand and gave his alleged reason for it. The mother of appellant also showed the picture to Mrs. Ellison. At the invitation of appellant's mother, Mrs. Ellison viewed the appellant in jail, and at the time made the observation, 'well, you don't look like the one, with your hair cut short.' This viewing was apparently done within a month or so after the robbery occurred.

At the trial, Cox and Mrs. Ellison testified that they were close to the alleged robbers at the scene of the robbery and had the opportunity to observe them for several minutes at close proximity. They both made an in-court identification of the appellant.

The appellant did not testify in his own defense, but offered five witnesses. In substance, his mother, Annie Elizabeth Moses, testified that when Mr. Cox viewed the picture of appellant, he denied appellant was involved in the robbery, and when Mrs. Ellison viewed the appellant in jail, she also denied he was involved. Witness William Thomas Moses, the stepfather of appellant, testified that appellant had sawed off a shotgun at the Moses' home a short

while before the alleged robbery, and that he did not see the appellant the night or morning of the robbery. He also testified that he was present with his wife, Annie Elizabeth Moses, when the photograph was shown to the State's witnesses, and substantiated the testimony of his wife with regard to their statements. He also testified that he was present with his wife when Mrs. Ellison viewed the appellant in jail and indicated he was not the one she had seen at the robbery.

Billy Wayne Roberts, the cellmate at the viewing, testified as heretofore referred to. The other two witnesses, Arthur and Eugene Barron, testified that they were with the defendant in Birmingham during the entire night and early morning of April 6, 1969, and he did not leave the apartment where they were during that time.

It appears from appellant's brief that he bases his right to reversal in this case on three propositions. First, his rights under the Sixth Amendment were violated in that he was viewed in his cell before the trial by witnesses who later identified him as one of the persons engaged in the robbery; that at the time of a so-called line-up in his jail cell, there was no other person present except his cellmate, the jailer, and State witnesses; that the appellant had no attorney present at the time. Second, he was inadequately represented at the trial by the court-appointed counsel because of the lack of time allowed counsel to prepare appellant's case. Third, he was never given a right to a preliminary hearing, and he alleges this right is a vital and necessary procedure in the State of Alabama.

Both appellant and the State cite United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. It is true this case holds that due process requires the presence of an attorney for appellant at a line-up after an indictment. The same rule is laid down in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

If an in-court identification, however, has an independent origin and is not tainted with a view of appellant in an illegal line-up, the evidence of independent opportunity for identification is admissible against the appellant to establish his identity. In other words:

"It is now well settled that the holdings in *Wade* and *Gilbert*, supra, require the exclusion of in-court identifications which are the product of a line-up conducted in the absence of counsel unless it is established by clear and convincing evidence that the in-court identifications are based upon observations of the suspect other than those at the line-up." White v. State, 48 Ala.App. 334, 264 So. 2d 565.

To quote further from Hannon v. State, 48 Ala.App. 613, 266 So.2d 825:

"We hold that the in-court identification was not tainted by the lineup. This is a clear case on 'independent source.' She knew him because she 'eye-balled' him for five minutes during the robbery."

To sum up:

"If it is established by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification, then prior identification at line-up without counsel's presence does not constitute reversible error See *Wade* and *Gilbert*, supra." Shewey v. State, 48 Ala.App. 730, 267 So.2d 520.

The evidence in the case at bar shows that State witnesses, Cox and Ellison, were confronted at close quarters with the two alleged robbers some several minutes and viewed them full in the face during the robbery. The intruders were not disguised, the premises was lighted, and the identification testified to by these witnesses seems to be positive. We hold there was no error in the submission of this testimony to the jury for its consideration.

As to the argument of appellant that he was not accorded a fair trial and ade-

quate representation by counsel because of lack of time to prepare the case, we are not convinced. We are impressed that the conduct of the trial itself by appellant's counsel was thorough and professional. A careful consideration of the record shows witnesses for the State were carefully and scarchingly cross-examined, and the testimony for appellant was well-developed and presented to the court. Affidavits, signed by counsel, were submitted along with appellant's brief, and indicate that appellant was kept in Holman Prison for a good part of the time elapsing after the appointment of counsel to represent him. Even if we go outside the record to consider these affidavits, it is still true that counsel had access to the mother and father of appellant to assist him with the preparation of the trial. He apparently had access to the alibi witnesses, since they appeared in court and testified for appellant, and there are legal methods by which he could have forced a removal of appellant from Holman Prison to Clanton at some period. He was appointed counsel some nine months before the trial of the case. We do not believe the defendant's rights were prejudiced as he complains in this regard.

With regard to the appellant's complaint that he was not accorded a preliminary hearing, Coleman v. Alabama, 399 U. S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, expressively holds that a preliminary hearing is not a required step in a criminal prosecution in the State of Alabama. The prosecutor in this State may go directly to the grand jury with what information he has. In line with the rule later laid down by the United States Supreme Court in *Coleman*, supra, this court stated in Bowman v. State, 44 Ala.App. 331, 208 So.2d 241:

"Appellant contends that he was not provided a preliminary hearing nor did he waive same. There is no necessity for a preliminary hearing in order to satisfy the requisites of due process and whether or not there was a preliminary hearing would have no bearing on the validity of the indictment and subsequent proceed-

ings incident thereto. Queor v. State, 278 Ala. 10, 174 So.2d 687; Manning v. State, 43 Ala.App. 182, 185 So.2d 145."

The State's evidence made a prima facie case, notwithstanding some inconsistencies and contradictions. This was a matter for the jury's consideration, and the verdict shows they were able to reconcile these matters in favor of the State.

We have responded to the argument of appellant in brief and have searched the record for any error of a reversible nature. We find none and the case is due to be affirmed.

The foregoing opinion was prepared by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the court.

The judgment below is hereby

Affirmed.

All Judges concur.