314 So.2d 104

**Terry Ray TAYLOR**

v.

**STATE.**

**8 Div. 533.**

Court of Criminal Appeals of Alabama.

May 27, 1975.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

J. Douglas Evans, Florence, for appellant.

Terry Ray Taylor, pro se.

HARRIS, Judge.

Appellant was convicted of robbery and sentenced to twelve years in the penitentiary. He was represented at all stages of his trial by a court-appointed counsel, who also represents him on this appeal. He pleaded not guilty at arraignment and also pleaded not guilty by reason of insanity.

Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County charge that before the finding of the Indictment Terry Ray Taylor and Charles David Moore, whose names are to the Grand

Jury otherwise unknown, than as stated, feloniously took and carried away Five Hundred Three Dollars and Ninety-five Cents ($503.95), in lawful currency and lawful coined money of the United States of America, the exact denomination and description is otherwise unknown, the property of Nancy Killen from her person, and against her will, by violence to her person or by putting her in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."

On September 21, 1973, a lone bandit carrying a shotgun entered the Shop-Rite Super Market, located at 4404 Huntsville Road in Florence, Alabama, between the hours of 5:30 or 6:00 P.M. He approached the first cash register and raised the shotgun saying "Don't anybody move or I'll kill you."

Mrs. Gevena Evans was operating cash register number 2, and Mrs. Nancy Killen was operating cash register number 1. There were some fifteen or twenty customers in the store at this time.

Mrs. Evans was asked if the man said anything else and she replied:

"Yes, he said different things, not altogether to me, but warned the man—he said, 'Don't anybody move, I mean don't move.' There was a man at the candy rack and he said to him, 'You at the candy rack, I said don't move, and if you move again, I'm going to shoot.' He was pointing back behind me, had the gun raised kinda more or less on me or over my shoulder and he said, 'You tell that woman there if she wants that girl alive, she better get her out of the aisle and make her stand still because I mean I'll shoot.' And he also told me at one time, 'You're thinking about calling the police.' I said no. And he said, 'I wouldn't do it if I were you, somebody is liable to get hurt.' And I said, 'Don't worry, I'm not.' "

It was the first cash register operated by Mrs. Nancy Killen that was robbed. The bandit told Mrs. Killen, to open the cash register. He was pointing the gun at her at this time. She opened the cash register and he told her to get out in the aisle with the rest of them. The bandit reached into the open cash register with his right hand and got all the money and put it in his pockets. He then told everyone in the store "to hit the floor face down and not look up. I mean your nose on the floor." The cash register operated by Mrs. Killen was the only one robbed. The other two were not touched.

Mrs. Killen testified that she recognized appellant when he entered the store with the shotgun. She said he went to school at Rogers and that she went to the same school though they didn't go at the same time, but she knew him as she visited some of her friends at the school at the same time he was a student there. She further testified that Mrs. Evans came to her register to get a check cashed given to her by a customer and she and Mrs. Evans were standing side by side when appellant came to her register with the shotgun in his left hand pointed downward. She and Mrs. Evans were face to face with the robber when he raised the gun and ordered her to open the cash register and get out of the way. She said appellant had a funny or weird expression on his face, but she recognized him immediately.

She further testified that a deputy sheriff brought three photographs to see if the robber was in any of the photographs. She said appellant was wearing a mustache in the photograph but was not wearing a mustache at the time of the robbery, but she saw his face when he walked in the store and she immediately recognized him and knew his name. She testified his name was Terry Ray Taylor. She said she could not be mistaken as to the identity of appellant.

Both Mrs. Evans and Mrs. Killen made positive in-court identification of appellant as the man that robbed the store on September 21, 1973.

Appellant did not testify at this trial.

Charles David Moore testified in behalf of appellant. He said he had known him for about fifteen years. He further testified that he was with appellant on the afternoon before the robbery. They were at a trailer at Happy Hollow where a gambling game was going on; that appellant left the trailer around 2:30 P.M. saying he was going to hitch-hike to Nashville, Tennessee, and he left the trailer walking but he did not know the direction appellant went. He saw appellant the next morning but did not see him with any money.

On cross-examination Moore was asked if he had been convicted of burglary in the second degree in Lauderdale County on October 20, 1969, and he replied, "yes, sir." He was further asked if his companion in that burglary was Terry Ray Taylor and he replied, "That's right."

Appellant claims that his constitutional rights were violated when he was refused a preliminary hearing with counsel representing him.

Appellant was indicted on January 18, 1974. On March 25, 1974, appellant's attorney filed a motion to dismiss the indictment against him on the ground he had been denied a preliminary hearing. There was no ruling by the trial court on this motion, and there was no request for a ruling.

There was some testimony during the trial of this case referring to a preliminary hearing *in this particular case,* but the record does not reflect the date of such hearing. Furthermore, when this case was called for trial both sides announced ready.

It is interesting to note that when the court was qualifying the jury he asked the jury panel if anyone was related by blood or marriage to the defendant and one juror stood up. This juror told the court that the defendant was his brother. The court asked the state if there was a challenge to this juror and the state prosecutor said, "No, sir, we don't challenge him." Appellant's counsel said, "Yes, sir, we do." Appellant's brother was then removed from the strike list.

Prior to arraignment the trial judge asked appellant if he had a preliminary hearing before Judge Duska (Judge of the Lauderdale County Court) and appellant replied, "No, sir." The trial judge examined the trial sheet and said to appellant:

"The lower court appointed Mr. Douglas Evans as your attorney to represent you and the court reaffirms that appointment and does appoint Mr. Evans. Now, in case no. 15010, Mr. Evans, as his attorney, is the defendant ready for arraignment?"

Mr. Evans said,

"Yes, sir, he is, your Honor."

Appellant did not object to the appointment of Mr. Evans as his trial counsel. After his conviction the court appointed Mr. Evans to represent him on appeal. This did not please appellant and he wrote the trial judge to dismiss Mr. Evans as his attorney and to furnish him a free transcript of the record and that he was going to file a "pro se" brief. The trial court had the clerk send appellant a free transcript, but refused to relieve Mr. Evans from representing appellant on appeal. Mr. Evans filed a brief and appellant filed a "pro se" brief. Appellant also wrote a letter to Mr. Evans dismissing him as his attorney on appeal.

Appellant in his "pro se" brief attached several "exhibits" that were not introduced in evidence during the trial in chief. Under the law of this state, we cannot consider these exhibits.

In Edwards v. State, 287 Ala. 588, 253 So.2d 513, it is said:

"The rule is that argument in brief reciting matters not disclosed by the record cannot be considered on appeal, Christian v. Reed, 265 Ala. 533, 92 So.2d 881; and the record cannot be impeached on

appeal by statements in brief, by affidavits, or by other evidence not appearing in the record. Coleman v. Estes, 281 Ala. 234, 201 So.2d 391; Liberty National Life Ins. Co. v. Patterson, 278 Ala. 43, 175 So.2d 737; Evans v. Avery, 272 Ala. 230, 130 So.2d 373."

See also Phillips v. State, 32 Ala.App. 238, 24 So.2d 226; Clark v. State, 280 Ala. 493, 195 So.2d 786; Argo v. State, 282 Ala. 509, 213 So.2d 244.

In Cordle v. State, 53 Ala.App. 148, 298 So.2d 77, certiorari denied, 292 Ala. 717, 298 So.2d 85, we said:

"A preliminary hearing is a critical stage in the criminal process in Alabama and at such a hearing the appointment of counsel is required for indigent defendants. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387.

"For well over a hundred years the preliminary hearing procedure in this state required the magistrate, or someone under his direction to reduce to writing the testimony of the witnesses both for the defendant and the state and to have the witnesses sign their names to their respective statements. Title 15, Section 135, Code of Alabama 1940. The Legislature saw fit to repeal this section by Act No. 1106, General Acts of Alabama 1969, approved September 12, 1969. There is no other statute requiring the recording and transcription of the testimony had and taken at a preliminary hearing in Alabama. Williams v. Jasper, 287 Ala. 237, 250 So.2d 701.

■ For aught that appears from this record appellant, an indigent, had a preliminary hearing and was represented by counsel.

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Supreme Court held:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eye-witnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973 [18 L.Ed.2d 1199], and with decisions of other courts on the question of identification by photograph."

As we have indicated, the identification of the accused was not based upon photographic identification. Mrs. Killen knew appellant and recognized him when he walked in the store with the shotgun and she knew his name. The three photographs shown her by the police officer did not aid her in the least in the identification process as she had known him for some years prior to the holdup.

■ The in-court identification of appellant by Mrs. Evans and Mrs. Killen had an independent origin. They were in close quarters with appellant at the cash registers for several minutes and viewed him full in the face for several minutes during the robbery. The robber was not disguised, the premises were well lighted, the robbery occurred in broad daylight, and their identifications were positive. Rhodes

v. State, 50 Ala.App. 661, 282 So.2d 100; Poole v. State, 53 Ala.App. 156, 298 So.2d 85; Coleman v. Alabama, supra, reversed on other grounds.

There was no motion for a new trial; there was no request for the affirmative charge; there were no exceptions reserved to the court's oral charge, and there were no adverse rulings on the admission of evidence. Counsel did make a motion to exclude the state's evidence on the ground that the evidence did not make out a prima facie case. This motion was overruled.

■ The evidence adduced by the state was overwhelmingly sufficient to submit the issue of guilt to the jury and there was no error in overruling appellant's motion to exclude the evidence. Rhodes v. State, supra; Young v. State, 283 Ala. 676, 220 So.2d 843.

We have carefully searched the record for error injuriously affecting the substantial rights of appellant and have found none.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.