319 So.2d 744

**Willie CARR**

**v.**

**STATE.**

**6 Div. 858.**

Court of Criminal Appeals of Alabama.

Aug. 19, 1975.

Rehearing Denied Oct. 1, 1975.

Robert R. Bryan, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin Q. Brown, Jr., Asst. Atty. Gen., Birmingham, for the State.

HARRIS, Judge.

Appellant was convicted of robbery and the jury fixed his punishment at twenty years in the penitentiary. At arraignment, attended by counsel, he pleaded not guilty. He was adjudged guilty and sentenced in accordance with the verdict of the jury. He gave notice of appeal and was found to be indigent. He was furnished a free transcript but is represented by new and retained counsel on this appeal.

Appellant did not testify in his behalf but offered testimony in support of his alibi.

On November 8, 1973, between the hours of 1:45 and 2:00 o'clock in the afternoon, the Dolly Madison Thrift Store which was then located at 1101 North Twenty-Sixth Street was robbed by two Negro men. Mrs. Sue Hollis was working in the bakery department and was alone at the time the two men came in. Another girl who was employed at the store had gone to the bank to make a deposit. She described one of the men as being two to three inches shorter than the other one. She stated that both men were wearing three-quarter length beige colored coats. She said both had on hats, — "brownish-beige, poochedout hats with a little brim across the front."

Mrs. Hollis further testified that both men carried open knives, but the smaller of the two did all the talking. She said he grabbed the throat of her uniform and said, " You ___ ___, you say anything and I'll cut your throat from here to here." He told her to open the cash register and go to the back of the store and lie on the floor. She opened the cash register and went to the back followed by this man. The tall man went behind the counter. When she got to the back, she kind of stooped down and the man said, "Lay down, ___, and give me those rings and that watch you have on." She described the rings as a wedding band and an engagement ring and they were worth a total of six hundred dollars, that the watch was a Hamilton watch, and it was worth forty-five dollars. After taking her jewelry the man walked toward the front of the store. He returned in a few seconds and said, "___, come open the register." She got up and went to the register. The register was jammed and she could not open it. He told her, "If you don't open the register, I am going to cut your throat." She said, "Well, I am sorry but I can't open it." They returned to the back and she got on the floor. The same man came back to her for the third time

and said, "Where's your purse?" She told him where her purse was located and he got her purse which she said was worth twenty-five to thirty dollars. She had forty dollars in change in her purse. Mrs. Hollis further testified that she had not seen her rings, watch, purse or money since the day of the robbery.

After the robbers left she went to the cash register and found it empty. She called the police and several officers responded immediately. She gave them a description of the robbers and told them the robbery lasted a good five minutes during which time she got a good look at them in broad daylight in a well lighted store.

The next day an officer brought her a number of photographs and she immediately identified appellant as the man who put the knife to her throat and threatened her life and she also identified the tall man who turned out to be one Percy McAlpine. She subsequently attended a lineup and identified the two men who robbed her on November 8, 1973. She also made a positive in-court identification of appellant.

Allen Cabiness testified that every other day he delivered ice to the Dolly Madison Thrift Company and that on November 8, 1973, around 1:30 p. m., he went to this place to make a delivery and his driver drove the truck right up to the door. He stayed in the truck while the driver went inside the store. While he was sitting in the truck, he observed two black males come out of the place and go down the street. He did not observe them long enough to give a description of them. His driver came back to the truck and told him no one was in the store. He got out and walked to the back and found a woman lying on the floor. That this woman looked around and saw him coming and said, "Oh, am I glad to see you." He asked her what happened and she said, "They robbed me."

Mr. B. J. Mann, a patrolman with the Birmingham Police Department, was on special detail investigating robberies and house burglaries and was riding in an unmarked car. He heard a radio dispatch at 1:45 p. m. describing a robbery and giving the tag number and the description of a white Mercury automobile and bearing tag number 25–22489, 1973, Alabama. He spotted the automobile in the 3800 block of First Avenue, North, eastbound. He was westbound and turned over into the eastbound lane. He noticed two or three units following this car. He stopped the car at 2:15 p. m. He was present when other officers arrested three Negroes who were riding in this car.

Officer Mann made an inventory search of the Mercury automobile. From the record:

"Q. What were the articles?

A. I have listed one blue sweater; two pair mens pants, one brown pair, one green pair; two shirts; one pair shoes; one maroon jacket, sweater type jacket; one plaid coat, half length; one plastic raincoat; one cream jacket; one maroon flop hat; one spare tire assembly; one bumper jack; one four-way lug wrench; one glass with 7-Up on the glass; one empty watch box; five pounds of Irish potatoes; and one gallon can.

Q. Do you recall if any individual taken to the City Jail, or wherever they were taken, had on a cream colored jacket?

A. Yes, sir."

Officer Mann further testified that the rear window on the Mercury was a plastic window and was taped up and this was described in the radio dispatch that he picked up. He stated he did not find the rings, watch, purse or any money in the car when he was making the inventory search.

Mr. Sam Monteith was called as a witness for the state. He testified that he owned and operated the Springaire Cleaning Center located at 3916 Tenth Avenue, North, and that his place was next door to

the East Birmingham Variety Store; that he was at his place of business on November 8, 1973, around 1:30 p. m., when a Mrs. Pearline Brown came in his place to wait until the East Birmingham Variety Store, where she was employed, opened for business. He stated that Mrs. Brown was ill in the hospital at the time of appellant's trial.

He further testified that he had a conversation with Mrs. Brown on that occasion concerning three black men and as a result of that conversation, he noticed three black males get in a white Mercury convertible automobile and that the rear window was taped up with silver or masking tape, the complete window. He got the tag number of the automobile but at appellant's trial could remember only the first two numbers denoting the county. The first two numbers were "25." He called the Birmingham Police Department and gave an officer the tag number and a description of the automobile and told the officers the car was occupied by three black males. He stated that one of the men had on a knit cap and one had on a hat but he didn't know about the third man, and it seemed to him they were wearing some kind of blousy shirts.

On direct examination Mr. Monteith testified that he had not seen either of these three men prior to that date. On cross-examination the following occurred:

"Q. (BY MR. HILLIARD) Mr. Monteith, have you seen the person to my left before?

A. Yes.

Q. Would it be a fair statement to say you have seen him several times?

A. I think so, yes.

Q. Would you have seen him—do you know where you have seen him?

A. Well, I saw him in court last year and—may I ask him a question?

THE COURT: No, we had better be careful about that.

THE WITNESS: Can I say I think so?

THE COURT: Yes, you can say that.

MR. HILLIARD: Well, Your Honor, I will permit him to ask a question.

THE COURT: Go ahead, ask the question then.

THE WITNESS: Did you used to be a customer of mine, Willie?

THE DEFENDANT: Yes, sir, I did.

THE WITNESS: When we first bought the place, it seems like we had a Willie Carr and I believe I remember him from that.

Q. Was Willie Carr one of the three persons you saw that day?

A. Right. I say I didn't see them that close. They were scuffling and shuffling to get away.

MR. HILLIARD: All right, thank you."

After the above testimony was given the prosecutor told the court that he had been taken by surprise and asked the court to allow him to cross-examine the witness, and he was allowed to do so. The prosecutor asked him if he had testified previously in this case and he answered, "yes, sir." He was permitted to read a transcription of his previous testimony and it developed that this witness identified appellant as one of the three black males he saw get in the Mercury automobile above described.

Mr. Howard B. Felts, a Detective with the Birmingham Police Department, testified he was assigned to the robbery division and was in charge of the investigation of the robbery of the Dolly Madison Thrift Store. He stated he got the complete number of the Mercury automobile from Mr. Monteith and the number was "25-22489." After the suspects were arrested, he conducted a lineup which was viewed by Mrs. Sue Hollis and she immediately identified appellant as one of the

robbers and she also identified the other robber but the court limited the lineup testimony to the identification of appellant. Mr. Felts also testified that Mrs. Hollis positively identified appellant from a stack of photographs viewed by her.

The state rested and appellant's counsel moved to exclude the state's evidence on general grounds. The court overruled the motion.

The first alibi witness for appellant was a local attorney. He testified that he knew appellant and Percy McAlpine. He testified they were waiting in his office during his lunch hour. That he represented both appellant and McAlpine and that he waived the McAlpine case between 12:30 and 1:00 o'clock on November 8, 1973; that he had to go back to Federal court that afternoon and he rode in the car with appellant and McAlpine to the Federal Building and it could have been 12:45 p. m. when he got out of the car at the Federal Building. This attorney said he did not know a man by the name of Pernell Weatherington.

Pernell Weatherington testified that he knew appellant and Percy McAlpine and that the night before November 8, 1973, McAlpine spent the night at his house. The next morning they called appellant to carry them to see a counselor at the Spain Rehabilitation Clinic. That a little after 11:00 o'clock they went to the office of the attorney representing McAlpine as he had to be in court that day. The attorney was not in and they were told to wait. All three sat in the office until the attorney arrived. When the attorney came in, they went to Judge Gwin's court where McAlpine's case was waived. The attorney kept telling them he had to be in Federal Court and he was running late. He denied that the attorney rode with them to the Federal Building.

This witness further testified after he, appellant and McAlpine were arrested they were placed in a lineup with three other men and he could hear an officer and a lady talking. That he heard the lady tell the officer that she was not certain that anyone in the lineup was involved in robbing her and the officer told her the two heavy men were the robbers and that she then identified appellant and McAlpine.

On cross-examination he testified that he clearly remembered that they did not drive McAlpine's attorney to the Federal Court on the day McAlpine's case was waived to the grand jury. He further testified that in 1971, he was convicted of aggravated assault and served time in Ft. Leavenworth, Kansas. He stated that on November 8, 1973, they did not go to the East Birmingham Variety Store where Mrs. Peraline Brown was working.

By stipulation the testimony of Mrs. Pearline Brown given at the trial of this case at a previous term was admitted in evidence. In that trial Mrs. Brown positively identified appellant as one of two Negroes who came in the East Birmingham Variety Store where she was employed on November 8, 1973, and she also identified McAlpine as the other one. She said they were wearing beige colored hats and they had on jackets which were three-quarters in length. She identified a photograph of Pernell Weatherington as being the man on the outside of the store.

Mrs. Hattie Mae Thomas testified for the state. She stated that on November 8, 1973, she went with her daughter to the East Birmingham Variety Store where Mrs. Pearline Brown worked. That she was in the store at about 12:30 or a quarter to one. There were some black males in the store at the time. She was asked to look around the courtroom to see if she could identify any of the individuals she saw in the store that day. She pointed to appellant.

On cross-examination she was asked the height of the two Negroes she saw in the store that day and she said the tallest one was close to six feet and the shortest one was about five feet six. She said they had

on hats and one had on a beige colored coat.

In the light of Pernell Weatherington's testimony concerning the lineup we think it well to quote Mrs. Hollis' testimony in reference thereto:

"Q. All right. Now at the lineup—at the time you were at the lineup, did you—at any time did anyone say to you anything?

A. Yes, uh-huh.

Q. All right. Now who was that person?

A. Sgt. Felts.

Q. Was anyone else in the room with you when you looked through the lineup?

A. Yes. There were several policemen.

Q. Several policemen.

A. Uh-huh.

Q. Did either one of them ever say anything to you?

A. No.

Q. What did Detective Felts say to you?

A. He told me to look at the lineup, take my time and make sure if I saw the right ones—

Q. How many times did he tell you that?

A. Just told me one time when I first went in.

Q. Did he say anything else to you during the time you were in the room?

A. No, he just told me to be sure.

Q. To be sure?

A. To be sure.

Q. All right. Now at any time—did you at any time tell him anything while you were in the room?

A. I just picked out the two that was the ones.

Q. All right. You say they were the ones. Did you tell him—what did you tell him?

A. I just told him that one and that one. I don't remember now what numbers they were. I did at the time but I don't now.

Q. All right. Did he say anything else to you?

A. No."

This case was vigorously tried on both sides and appellant certainly had his day in court. A fair trial is all he was entitled to and he got one and that is all he could expect.

■ There was no motion for a new trial; there was no request for the affirmative charge, and no exceptions were reserved to the court's oral charge to the jury. There was a motion to exclude the state's evidence but no specific grounds were alleged. The evidence in this case presented a straight jury question as to appellant's guilt.

In *Young v. State*, 283 Ala. 676, 220 So. 2d 843, the Supreme Court said:

"Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error. *Drummond v. State*, 37 Ala.App. 308, 67 So.2d 280; *Wade v. State*, 24 Ala.App. 176, 132 So. 71."

We have repeatedly held that alibi testimony, like all other evidence in a criminal prosecution, is an issue to be determined by the jury. The jury resolved this issue against appellant, and that leaves little to be said. *Brown v. State*, 229 Ala. 58, 155 So. 358; *Price v. State*, 53 Ala.App. 465,

301 So.2d 230; *Mosley v. State*, Ala.App., 304 So.2d 613.

 It is established law in this state that where there is legal evidence from which the jury can by fair inference find the defendant guilty, this court is without warrant to disturb the verdict. Whether there is evidence of the defendant's guilt is a question of law and its weight and probative value are for the jury. *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690; *Bolton v. State,* 21 Ala.App. 373, 108 So. 631; *Washington v. State,* Ala.App., 313 So.2d 544; *Taylor v. State,* Ala.App., 314 So.2d 104.

Appellant claims that the lineup was illegally constituted. He bases this claim on the testimony of a convicted felon. The other testimony in the record completely refutes this claim.

Conflicting evidence always presents a question for the jury as to the guilt of the defendant unless the evidence palpably fails to make out a prima facie case. The evidence in this case overwhelmingly pointed to the guilt of appellant. *Morris v. State,* 47 Ala.App. 132, 251 So.2d 629; *Jones v. State,* Ala.App., 307 So.2d 59.

The victim of robbery viewed appellant for five minutes in a well lighted store in broad daylight, in close quarters on three occasions, without disguise. Her testimony was positive and unequivocal. *Rhodes v. State,* 50 Ala.App. 661, 282 So.2d 100.

In *Hill v. State,* 207 Ala. 444, 93 So. 460, the Supreme Court held:

"Circumstantial evidence may afford satisfactory proof of the corpus delicti; and if any facts are shown from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused is thereby rendered admissible."

Appellant claims that his constitutional rights were infringed on when his counsel agreed to let a witness ask him a question during the trial. We do not agree with appellant's contention. This was a matter of trial strategy and did not incriminate appellant in the slightest degree.

We have carefully examined the entire record and have found no reversible error. The judgment of conviction is affirmed.

Affirmed.

All the Judges concur, except CATES, P. J., not sitting.