HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at imprisonment in the penitentiary for a term of 35 years. Prior to arraignment it was determined that appellant was indigent and counsel was appointed to represent him throughout the trial proceedings. He pleaded not guilty. After sentence was imposed, he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
Appellant was 18 years of age at the time this offense was committed and he made application to be treated as a Youthful Offender. His application was referred to a probation officer for an investigation and report. After the report was filed, a hearing was conducted and his application for Youthful Offender status was denied.
The facts are not disputed that at 6:30' a. m. on January 31, 1975, a black male en *174 tered the store owned and operated by Mr. Coleman Brown in the town of Parrish, Walker County, Alabama, and bought a package of Kool cigarettes and a box of matches. Mr. Brown looked him squarely in the face for over a minute at close quarters in a well lighted store. After Mr. Brown gave this man the cigarettes and matches, this black male turned as if he was going to leave the store. At this point a second black male entered the store with a sawed-off shotgun and pointed it directly in Mr. Brown’s face and said, “We want your money. We know you cash a lot of checks and we want all of it.” The first black man then turned and walked behind the counter and stuck a small caliber pistol in Mr. Brown’s side. The man with the shotgun told the man with the 'pistol to take Mr. Brown’s gun and billfold. Mr. Brown took all the money out of the cash register and put it on the counter. There was $1,100.00 in U.S. currency made up with 20, 10, and 5 dollar bills. Appellant picked up all the money on the counter while the other robber still held the shotgun in Mr. Brown’s face, and both ran out the store. Mr. Brown was asked if the man with the pistol was in the courtroom and he pointed to appellant sitting at the counsel table and made a positive in-court identification of appellant as one of the robbers.
Prior to trial appellant filed a motion to suppress the State’s evidence both as to the identification of appellant and the confession made by him. Considerable testimony was taken on this motion out of the presence and hearing of the jury. Appellant testified at this hearing. The major contention made by appellant on the motion to suppress was that he was mentally retarded and could not knowingly, intelligently and voluntarily waive his constitutional rights and did not possess sufficient mentality to make a voluntary confession.
After appellant was arrested in Pratt City, Jefferson County, Alabama, and carried to the Sheriff’s Office in Jasper, Alabama, he was given the Miranda rights and warnings. These constitutional rights were read to him from a card by one of the two Deputy Sheriffs before he was interrogated. He was asked if he understood his rights and said he understood them. He then signed the waiver of rights form which was labeled “Voluntary statement,” and reads as follows:
“VOLUNTARY STATEMENT
Date 2-5-75 Place Walker Co. Jail Time Started 3:20 P.M. I, Milton Doss, am IB years old. My date of birth is 12 — 8— 1956. I live at 614 Ave U Pratt City. The person to whom I give the following voluntary statement, Chief Deputy Bunny Cottrell, having identified and made himself known as a Deputy J. R. Myers, DULY WARNED AND ADVISED ME, AND I KNOW:
1. That I have the right to remain silent and not make any statement at all, nor incriminate myself in any manner whatsoever.
2. That anything I say can and will be used against me in a court or courts of law for the offense or offenses concerning which this statement is herein made.
3. That I can hire a lawyer of my own choice to be present and advise me before and during this statement.
4. That if I am unable to hire a lawyer I can request and receive appointment of a lawyer by the proper authority, without cost or charge to me, to be present and advise me before and during this statement.
5. That I can refuse to answer any questions or stop giving this statement any time I want to.
6. That no law enforcement officer can prompt me what to say in this statement, nor write it out for me unless I choose for him to do so.
*175 A. No one denied me any of my rights, threatened or mistreated me, either by word or act, to force me to make known the facts in this statement. No one gave, offered or promised me anything whatsoever to make known the facts in this statement, which I give voluntarily of my own free will and accord.
B. I do not want to talk to a lawyer before or during the time I give the following true facts, and I knowingly and purposely waive any right to the advice and presence of a lawyer before and during this statement.
C. I certify that no attempt was made by any law enforcement officer to prompt me what to say, nor was I refused any request that the statement be stopped, nor at any time during this statement did I request for the presence or advice of a lawyer.
I have read each page of this statement consisting of _2_ pages, each page of which bears my signature, and corrections, if any bear my initials, and I certify that the facts contained herein are true and correct.
This statement was completed at-
M. on the 5_day of Feb. 1975.
WITNESS: (Signed) J. R. Myers
WITNESS: (Signed) Bunny Cottrell
(Signed) Milton Doss
Signature of person giving voluntary statement.”
At the hearing on the motion to suppress appellant denied that he was read his rights from a card by either one of the Deputies and that he did not read any of the papers he signed and that he did not make a confession that he took part in the robbery of Mr. Brown’s store. He did testify that he was 18 years of age and had finished the seventh grade.
On cross-examination he admitted that he understood what it means when someone says, “You have a right to a lawyer”; “you have a right to remain silent”; that “anything you say can and will be used against you in a court of law”; “you have a right to talk to a lawyer, and have him present with you while you are being questioned”; “If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish.” He was further asked, “Do you understand what it means when I say, ‘you don’t have to answer any questions’ ?" He replied, “Yeah, I know what you mean when you say I don’t have to answer any questions.” Notwithstanding his affirmative answers to each of the above questions he denied that his constitutional rights were read to him. Upon being further cross-examined he finally said, “He read me rights when he got through talking all that trash to me.” He then recanted his testimony and denied that his rights were read to him.
There was other testimony from school teachers to the effect that they had given appellant tests to determine his I.Q., reading ability and comprehension, and that he was mentally retarded. On some of the tests given appellant he scored from an I. Q. level of fifty percent to ninety-six percent. The normal I.Q. for anyone is 90 to 110.
Mr. Brown testified on the motion to suppress and he stated he had seen appellant on four different occasions. He got a good look at his face when he came into his store and purchased cigarettes and matches. He was called by one of the Deputies to come to the Sheriff’s Office and look at a subject. He was not told that the subject was a suspect or that they thought he was involved in the robbery. Mr. Brown went to the Sheriff’s Office and saw a black male sitting at a desk in an office in the presence of two Deputies. No one said anything to him and he did not say anything. He looked in the office, *176 nodded and left. He recognized appellant on this occasion. He recognized appellant at the hearing on the motion to suppress and the fourth time was at the trial in chief when, as above stated, he made a positive in-court identification of appellant as the man who stuck a pistol in his side when the other robber had the shotgun in his face. He based his identification on seeing him face to face in the store and also at the Sheriff’s Office.
Chief Deputy Sheriff Bunny Cottrell testified that appellant was given the Miranda rights before he agreed to give a statement concerning the robbery; that Cottrell wrote down the statement just as it was given to him by appellant; that after the statement was completed Cottrell read it to him and appellant signed it. He stated that Deputy Sheriff Jimmy Ray Myers was present when appellant signed the waiver of rights form and was present when appellant confessed to his involvement in the robbery.
The motion to suppress was overruled. A great deal of the testimony had on the motion to suppress was given during the trial in chief.
Mr. Brown testified that his identification of appellant was based on the opportunity he had to observe appellant at the time of the robbery face to face and that appellant had nothing over his face.
In summary Deputy Sheriff Jimmy Ray Myers testified that prior to taking the confession from appellant that neither he nor anyone in his presence or hearing offered appellant any promise, hope of reward or any other inducement to get him to make a statement. He stated that no one in his presence or hearing told appellant that it would be better or worse for him if he did not make a statement. He further testified that no one in his presence or hearing threatened, coerced or used any force or violence of any kind toward appellant.
This witness further testified that he read to appellant his “Miranda” rights from a card; that he asked appellant if he understood each of the rights that were read to him and appellant positively stated that he did. He filled out a form that appellant looked over and signed.
Appellant gave the officers the following written and signed confession:
“2-5-75 3:45 P.M.
Walker County Jail
Milton Doss, Jr.
1614 Ave. U. Pratt City, Ala.
D O B — 12-8-56
M.D. Milton Doss gave this statement to Bunny Cottrell and Jim Myers on his own free will and accord. Milton said that he spent Thursday night Jan. 30, 1975 at Henry Paige Home at Ensley. He said he and Henry left about 5AM on Friday Jan. 31, 1975. We came to Parrish, Ala. We got there about 6:30 A M on this same day. We went in Coleman Brown store. I had a 22 pistol and Henry had a 12 Ga. pump shot gun. I bought a pack of Kool Cigr. Henry then come in and put the shot gun on Mr. Brown. Henry told Mr. Brown to give him all his money. He got the money out of the cash register. We got $1100.00. I got $550.00 and Henry got $550.00. We was in Henry Paige 1966 Chev. Black over Green. Tag # 1C7506. This is a true statement. (Signed) X Milton Doss, Witness J. R. Myers.”
After the proper predicate was laid, this statement was admitted into evidence.
Appellant did not testify in his behalf but was contented to rest his case on the testimony of the witnesses who stated he was mentally retarded.
*177 In Payne v. State, 48 Ala.App. 401, 265 So.2d 185, Judge Almon (now Justice Al-mon), held:
“There is no prohibition against viewing a suspect alone particularly when this occurs near the time of the alleged criminal act. Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104. Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245. We conclude that this confrontation was not so unnecessarily suggestive and conducive to mistaken identification as to deny appellant due process of law.”
It is settled law that even if a pretrial confrontation is conducted in such a way as to violate due process, a later in-court identification of a defendant by a witness need not be excluded from evidence if it is shown to have a source independent of the confrontation. Rhodes v. State, 50 Ala.App. 661, 282 So.2d 100; Thomas v. State, 50 Ala.App. 227, 278 So.2d 230; Dawson v. State, 47 Ala.App. 293, 253 So.2d 362.
There can be no doubt that the robbery victim’s identification came from a source independent of the confrontation at the Sheriff’s Office. This independent source was at 6:30 a. m. on January 31, 1975, at Mr. Brown’s store where appellant, and another black man, robbed him. On this occasion Mr. Brown was behind the cash register on the counter of his store when appellant came in. Appellant stood directly in front of Mr. Brown and bought a package of cigarettes and a box of matches, Mr. Brown observing him at close range, face to face, for over a minute. When the second man entered the store with the sawed-off shotgun, appellant came around the counter where Mr. Brown was standing. Appellant got close enough to Mr. Brown to stick a pistol in his side and Mr. Brown saw the pistol. It took four to five minutes to complete the robbery and appellant’s face was not disguised in any manner.
In Mitchell v. State, 52 Ala.App. 174, 290 So.2d 241, this Court said:
“Since the only identification of the appellant by the State witness, prosecutrix, was at the preliminary trial and the main trial, her failure to make a positive identification of the appellant beforehand at a line up or at a showing of pictures, though properly admissible as testimony, is not conclusive, but may and should be considered along with any other testimony showing any and all opportunities that she may have had personally to view or have any contact with the appellant.”
In this case Mr. Brown was unable to identify appellant by looking at pictures. He had ample opportunity to view and observe appellant at the time of the robbery. The fact that he could not identify appellant from photographs is not conclusive to a misidentification in the light of the facts and circumstances of this case. This is a clear case of an independent origin. Hannon v. State, 48 Ala.App. 613, 266 So.2d 825; Houston v. State, 49 Ala.App. 403, 272 So.2d 610.
Appellant does not claim to be insane and there was no special plea entered for him. As a matter of fact on cross-examination on the hearing to suppress he stated that he had never had any mental problem. He testified that he quit school at the age of 16 and had been promoted to the seventh grade and that he was able to read a little. His witnesses claimed he was retarded but was able to understand many words.
In Elrod v. State, 281 Ala. 331, 202 So.2d 539, the Supreme Court said:
“An ‘illiterate’ is one ignorant of letters and books, unlettered, uninstructed, uneducated, unable to read or write, uncultivated, without book learning. State ex rel. Melvin v. Sweeney, 154 Ohio St. 223, 94 N.E.2d 785. Words and Phrases, ‘Illiterate.’ While illiteracy is a great misfortune, it does not mean insanity, *178 and does not constitute a defense to crime or render a confession of guilt, otherwise unobjectionable, inadmissible in evidence against him. Mitchell v. State, 206 Ark. 149, 174 S.W.2d 241. Accused’s intelligence, character and situation at the time of the confession of the crime charged are important considerations in determining whether the confession was voluntary, but the fact that accused was of tender age or weak intellect will not alone render the confession inadmissible in evidence as involuntary. State v. Ashdown, 5 Utah 2d 59, 296 P.2d 726, affirmed 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed. 2d 1443. Evidence tending to show a defendant’s weak mentality, feeblemin-dedness, and mental stress does not affect the admissibility of the confessions, but rather is a matter that bears on the weight, credibility and effect to be given the confessions by the jury. State v. Stewart, 238 La. 1036, 117 So.2d 583.”
Appellant filed a motion for a new trial and it was set for hearing. On the appointed day no testimony was presented. Appellant merely argued the matters he had already presented to the Court on the motion to suppress and other matters ruled on during the trial. We hold there was no error in overruling this motion.
A decision on a motion for a new trial rests largely within the sound discretion of the trial court and, in reviewing such decision, this Court will indulge every presumption in favor of the correctness thereof. Moore v. State, 52 Ala.App. 179, 290 So.2d 246; Johnson v. State, 51 Ala.App. 172, 283 So.2d 624.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.