298 So.2d 89

**In re Major POOLE, Jr.**

**v.**

**STATE of Alabama.**

**Ex parte STATE of Alabama.**

**SC 726.**

Supreme Court of Alabama.

June 6, 1974.

William J. Baxley, Atty. Gen. and William T. Musgrove, Jr., Sp. Asst. Atty. Gen., for the State.

No brief for respondent.

FAULKNER, Justice.

Poole was convicted of robbery by the Circuit Court of Russell County. His sentence was fixed at 10 years in the penitentiary. He appealed to the Court of Criminal Appeals. That court, on the ground of improper argument to the jury by the Assistant District Attorney, reversed and remanded the cause.

The trial court charged the jury on the law regarding good character of an accused in a criminal case. He charged that evidence of good character was to be taken along with all the other testimony, and if the testimony of good character and truthfulness, along with the other evidence, was sufficient to generate a reasonable doubt of his guilt, then the jury should acquit the defendant, even though the jury might have convicted him in the absence of good character testimony. During summation the Assistant District Attorney referred to the defendant's good character admitted in evidence. His remark was:

"I want you to think about this and use your common sense. Judas was a man of good reputation immediately before betraying Christ."

An objection was overruled.

The Court of Criminal Appeals held that the overruling of the objection constituted reversible error on authority of Mosley v. State, 241 Ala. 132, 1 So.2d 593 (1941).

The State petitions this court for a writ of certiorari. The State alleges that the decision of the Court of Criminal Appeals is in conflict with a prior decision of this court on the same point of law contained in Wright v. State, 279 Ala. 543, 188 So.2d 272 (1966). We granted the writ.

In *Mosley* the trial court charged the jury:

" 'Now, gentlemen, it has been argued to you about good character; and you know about good character. It has been argued by the defendant and by the State. The State brought or called to your attention some historical figures where a man had a good character and where they betrayed the good character they had. One man, Judas Iscariot betrayed his Savior after being a good consecrated, Godly man for a long time . . . so you see the mere fact that a man has a good character while it is a good to have it does not excuse from crime.' "

Upon exception taken the trial court withdrew his remarks to historical figures and instructed the jury not to consider that part of his charge. This court said in reversing, the withdrawal was in a more or less perfunctory manner and did not eradicate the impression that the language of the trial judge was an argument against giving weight to proof of good character. The court stated:

"  . . .  Defendant was due the benefit of his proof concerning his good character without impairment of its weight or credibility by oral instruction from the court."

The opinion of the Court of Criminal Appeals, 53 Ala.App. 156, 298 So.2d 85 states that:

"Judas was the most despised man in Biblical history and the passage of centuries has only served to solidify that feeling in the hearts and minds of generations after generations of peoples everywhere on the globe. No more opprobrious epithet, nothing more demeaning, degrading or debasing can be imagined than to liken a human being to Judas Iscariot.

"The assistant district attorney transcended all boundaries of legitimate argument in referring to Judas in connection with appellant and his good character evidence, and committed prejudicial error . . . ."

We do not agree there was prejudicial error in referring to Judas. Judas, a disciple who handled the money of the twelve, became an informer and identified Christ to Roman soldiers when they intercepted and arrested Him in the Garden of Gethsemane during the night of what Christians now call Maundy Thursday. Judas did not commit any act which Christ did not already know about. Christ identified Judas at The Last Supper to His disciples in the Upper Room as the one who would betray Him. A short time after the betrayal, Judas, so some historians inform us, regretted his actions, threw away his

pieces of silver, and suffered a horrible death. So, is Judas despicable or does he deserve human pity? He was merely a part of a fulfillment.

 In Wright v. State, supra, reversible error was alleged because the District Attorney in his closing argument said in effect Judas had betrayed Christ, and Simon Peter had betrayed Christ three times and the defendant, in his three statements, had betrayed his wife, in that "in these three statements he had made he hasn't told the truth exactly about the homicide of his wife." As this court stated in the opinion authored by Justice Harwood:

> "Criminal trials are adversary proceedings, and . . . are not social affairs. Argument of counsel should not be so restricted as to prevent reference, by way of illustration, to historical facts and public characters, or to principles of divine law or biblical teachings."

We adopt that language in this case.

The holding of the Court of Criminal Appeals in the case before us is in conflict with *Wright* and is due to be reversed.

Reversed and remanded.

HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.

HEFLIN, C. J., and MERRILL and JONES, JJ., concur in result.

COLEMAN, J., not sitting.

JONES, Justice (concurring in result).

I concur in the holding expressed in the majority opinion to the effect that counsel's reference to Judas in his closing argument is protected by the "wide latitude of argument" rule; and, while I would not debate with my learned brothers on matters of theology or Biblical history, I must assert that nothing contained in the majority opinion can dissuade a lifetime of teaching and conviction that Judas Iscariot was in every sense a despicable, reprehensible character, and this despite all my Calvinistic (Hardshell) indoctrination of predestination. Under either version (be he the

subject of damnation or one to be pitied), the propriety of counsel's argument is sustainable under our liberal rules of advocacy, including the right to reply in kind.