DeCARLO, Judge.
Robbery, fifteen years.
The appellant was arraigned on September 4, 1979, and, on February 25, 1980, the date of appellant’s trial, he filed a motion for discovery and a motion to quash the indictment. The motion to quash was denied and the appellant was tried by a jury and convicted.
Three witnesses testified for the State: Mrs. Pearl Marcus, Mrs. Louise Pharo, and Mr. Dennis Bates.
Mrs. Marcus stated that on the morning of May 24, 1979, she was inside Bob and Jacks’s grocery store in Birmingham, Alabama, talking to the sole employee of the store, Mrs. Louise Pharo. Shortly after 8:00 A.M., a black male entered the store and pulled a gun on Mrs. Marcus and Mrs. Pharo. Mrs. Marcus testified that the robber was “kind of medium size, kind of small.” Further, she said he was wearing a “tobbogan on his head, a white shirt with a red and white kind of rose-looking flower on it,” and that he was “five-six or more in height.” According to Mrs. Marcus, the robber, whom she later positively identified in court as the appellant, pointed the gun in her face and told her to lie down on the floor. He ordered Mrs. Pharo to open the cash register and then to lie down “back there” where Mrs. Marcus was. The appellant then threw Mrs. Pharo on her (Mrs. Marcus) while she was lying on the floor.
During the voir dire examination, out of the presence of the jury, Mrs. Marcus testified that, on the afternoon of the robbery, the police showed her a stack of about ten photographs. She stated that one of the *511 photographs resembled the person who had robbed her. She said she was later told that it was Victor Glover.
Mrs. Pharo stated that the robber, whom she also identified as the appellant, stuck a small gun toward her face, grabbed her blouse and said, “You bitch, you get over there and open the drawer.” At that time she opened the drawer and “backed off.” The robber then grabbed her purse but she snatched it back and threw it under the cooler. The man grabbed it back again and then threw her against the cashier’s drawer, saying, “You open that drawer, you bitch.” At that point, the robber shoved Mrs. Pharo down onto the floor of the frozen food box. Mrs. Pharo did not see anything after that until a customer came in and called the police.
Mrs. Pharo testified that a money bag or change bag was missing. She stated that she did not know the denominations of the money taken, but that it was “around two hundred dollars.” During cross-examination, Mrs. Pharo said she was told what amount of money had been taken. The court at that time instructed the jury not to consider what Mrs. Pharo had been told by her superiors.
The witness was subsequently excused and the jury was returned to the jury room. Out of the presence of the jury the court told the assistant district attorney that, “You had better prime her. I normally don’t suggest that somebody prime a witness, except to keep from blurting out something that is not admissible.”
Afterwards, the trial was resumed and Mrs. Pharo testified before the jury that the money from the previous night’s receipts was in the register when the robber entered, but that it was not in the register when he left.
The testimony of Dennis Bates corroborated that of Mrs. Marcus and Mrs. Pharo. Mr. Bates stated that he had known the appellant, Victor Antonio Glover, for four or five years and had gone to school with Glover and Tyrone Tinsley. He recalled that, on May 4, 1979, he was at Tyrone Tinsley's house, located about two blocks from Bob and Jack’s grocery store. Tinsley and Glover were also there. Bates said that, about 8:00 A.M., both appellant and Tinsley left the house and within ten or fifteen minutes they returned with a money sack.
At the end of Bates’ testimony, the State rested its case and the appellant moved to exclude the State’s evidence. The motion was overruled and the appellant called two witnesses to testify in his behalf: Charles Simmons and Tyrone Tinsley.
Charles Simmons testified that, on May 24, 1979, about 7:15 A.M., appellant had gone to do yard work with him. Simmons stated that they worked until approximately 4:30 P.M. and then returned home. During cross-examination, Simmons admitted that he was appellant’s brother-in-law.
Tyrone Tinsley, an inmate at Kilby Correctional Center, testified that, on May 24, 1979, he robbed Bob and Jack’s grocery store and later pleaded guilty to that offense. He said the appellant was not the individual who participated in the robbery with him on that date.
I
The appellant complains that the trial court committed reversible error when it overruled his motion to exclude the State’s evidence. He argues that the State failed to establish a prima facie case of robbery because the element of fear was not specifically proved. Moreover, he says that the State showed that the victim exhibited “bravado, not fear.” In support of this contention, the appellant cites Poole v. State, 53 Ala.App. 156, 298 So.2d 85, reversed, 292 Ala. 590, 298 So.2d 89. In Poole, this court listed the following three constituent elements of robbery:
“... (a) felonious intent, (b) force or by putting in fear, and (c) by that means a taking and carrying away from his person or in his presence.”
This court in Baker v. State, Ala.Cr.App., 344 So.2d 547 stated:
“In robbery, the force or intimidation employed is the gist of the offense. The *512 manner of taking is in the alternative; if force or violence is used, fear is not an essential ingredient. Conversely, if fear is used, there need be no violence.”
See Vickerstaff v. State, Ala.Cr.App., 374 So.2d 443; Johnson v. State, 57 Ala.App. 238, 327 So.2d 733.
This court in Golston v. State, 57 Ala.App. 623, 330 So.2d 446, recognized that the word “fear” used in connection with the offense of robbery is not to be considered as “an antonym of courage or fortitude.” In Golston, supra, we quoted from 6 Am.Jur.2d Robbery, § 22, as follows:
“No matter how slight the cause creating the fear may be or by what other circumstance the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and for the sake of his person, the victim is put in fear. Moreover, actual fear need not be strictly and precisely proved, since the law will presume fear if fear is to be just ground for it. And the mere fact that the victim complied with the assailant’s demands is itself indicative of fear. But the putting in fear must be sustained by evidence of acts or conduct or words or circumstances reasonably calculated to effect that result.” (Emphasis added.)
The evidence in the present case shows that the appellant was armed with a pistol, and, after pointing it in the face of the victim, demanded, “You bitch, you get over there and open the drawer.” The only reasonable conclusion that can be reached is the appellant’s conduct caused Mrs. Pharo to have the reasonable apprehension that force would be used against her if she did not comply with his demands. The fact that Mrs. Pharo complied with the robber’s demands was in itself indicative of fear. Golston, supra.
We believe that there was legal evidence from which the jury could by fair inference find the appellant guilty of the offense of robbery. Under these circumstances, this court has no right to disturb the verdict. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690.
II
The appellant insists that he was denied a fair and impartial trial due to the trial judge’s remarks, conduct and attitude toward the appellant. He contends that the trial judge took an active part in the prosecution by “suggesting ways the district attorney could prove his case.” Specifically, appellant complains that the trial judge instructed the district attorney to “prime the witness.”
The claimed error appears in the following exchange between the court and the district attorney during a recess, out of the presence of the jury:
“THE COURT: Let me say this to you: If you want to ask that witness if there was some money, regardless of how much, in the cash register before this incident, and if when she came out of that meat locker, or whatever it was, after that, that money was gone, she can testify to that.
“So far as robbery is concerned, it has to be something of value. It has to — this alleges money. It has to be some money.
“MR. RHODES: Yes, sir.
“THE COURT: But you just can’t prove what you usually have in there, and she can’t be continuing to blurt out what somebody told her.
“MR. RHODES: Yes, sir.
“THE COURT: Now, I don’t know whether other people connected with the store are available to you as witnesses, or not, but if they are not, of course, she— she said — at first, she said that that is when he got the money, and, then, she said during that period of time that she was back there in this locker, or box, or something, laying on her face.
“So obviously, if she didn’t — if that is just—
“MR. RHODES: Yes, sir.
“THE COURT: —If I heard her right, she didn’t see him take the money.
*513 “But she can say that the money was there when he came in, and that when she came out of the locker, or whenever, that the money was gone.
“MR. RHODES: Yes, sir.
“THE COURT: But you had better prime her, I normally don’t suggest that somebody prime a witness, except to keep them from blurting out something that is not admissible.
“MR. RHODES: Yes, sir, I understand.
“THE COURT: On the witness stand.
“MR. RHODES: Thank you, Judge.” [Emphasis added.]
We note at the outset that no objection or exception was taken to the court’s remarks. Further, we note that at the time Mrs. Pharo testified about the amount of money taken, the court not only admonished her, but also instructed the jury to disregard her statement concerning what she had been told by others.
It is clear from the foregoing portions of the record that the trial judge was nothing but impartial. His remarks were aimed at preventing further inadmissible testimony from going before the jury. We believe that his conduct was that of an experienced trial judge who recognized that illegal evidence could prejudice the appellant if the court did not act promptly. Clearly, the trial judge was acting in the interest of the appellant, and his conduct of the proceedings was not error.
We have searched the record and find no error prejudicial to appellant; therefore, the judgment of conviction by the Jefferson Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.