539 So.2d 324 (1988)
Jimmy LUNDY
v.
STATE.
6 Div. 912.
Court of Criminal Appeals of Alabama.
July 19, 1988.
Rehearing Denied August 23, 1988.
Certiorari Denied February 24, 1989.
Alabama Supreme Court 87-1439.
*326 TYSON, Judge.
This cause now comes before this court on remand from the Supreme Court of the State of Alabama.
James Lundy was indicted for the capital offense of "Murder done for pecuniary or other valuable consideration or pursuant to a contract for hire," in violation of § 13A-5-40(a)(7), Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment," and the trial court set sentence at life imprisonment without parole in a State penitentiary.
This appellant is charged with the capital offense of murder in the death of his wife, Wanda Lundy. The victim was jogging on the morning of June 23, 1984, at approximately 5:30 a.m. when she was struck by a vehicle.
Officer Charles Scott of the Hackleburg, Alabama, Police Department was traveling south toward Winfield on highway 253 in Marion County when he saw a truck coming toward him at a high rate of speed. Officer Scott was going home from working his shift which ended at 5:00 a.m. Officer Scott testified that the truck turned off Highway 253 onto a road which goes to downtown Winfield.
Officer Scott continued traveling on Highway 253. The intersection of Highway 253 and Three Bridges Bottom Road is a mile south of where the truck turned, and as Officer Scott approached the intersection, he saw someone lying face down in the southbound lane. This person was the victim, Wanda Lundy. Mrs. Lundy was lying face down with her head pointing west and her feet just across the center line of the highway. Mrs. Lundy was pronounced dead in Winfield Hospital emergency room at 6:45 a.m. by Marion County Coroner, Larry Reese.
An investigation of the scene disclosed a cloth fabric on the roadway which inferred that Mrs. Lundy's body first made contact with the road at a point 44 feet and 8 inches north of where the white sideline stripes of Highway 253 and Three Bridges Bottom Road intersect. The fabric itself was found on the western side of the sideline stripe of Highway 253. These fibers were consistent with those of Mrs. Lundy's clothing. The body was found 63 feet and 4 inches north of where the first clothing fibers were found, placing the body 108 feet north of the intersection. Pieces of the grill of the vehicle were found four feet from where the "initial contact" fibers were found. Fibers, buttons, and tennis shoes were also found near the body of the victim.
Billy Rex Goodson, a co-defendant named in count II of the indictment as having contracted with this appellant to kill Mrs. Lundy, was the driver of the vehicle which struck the victim. Mr. Goodson was also the driver of the truck which Officer Scott saw speeding on Highway 253.
Goodson drove to the residence of his uncle shortly after hitting Mrs. Lundy. Goodson told his uncle to call the police because he had hit someone, and he did not know how badly the person was injured. Goodson was tested for drugs and alcohol, and the results of these tests were negative. Goodson was not taken into custody at this time.
Goodson's 1972 Ford pickup truck revealed evidence of the accident. Pieces of the grill found by the victim's body matched those missing from the grill of his truck. Fibers, human skin, and blood samples were also found on the undercarriage *327 of this vehicle. These samples matched those of the appellant's wife, Wanda Lundy.

I
The appellant asserts that the trial court erred in overruling the motion to quash the indictment. The appellant contends that the indictment should have been quashed because it is "vague and defective to the point of impairing the substantive rights of the appellant." This court has reviewed the record and finds that the trial court was proper in not quashing the indictment. Count II of the indictment reads:
"The grand jury of said County charged that before the finding of this indictment, Jimmy Lundy and Billy Rex Goodson, whose names are otherwise unknown to the Grand Jury, did intentionally cause the death of Wanda Lundy, by striking her with a vehicle, pursuant to a contract, to-wit: Jimmy Lundy co-signed a personal loan with Billy Rex Goodson at the Citizen's Bank of Winfield and Billy Rex Goodson received the proceeds from said loan, in violation of § 13A-5-40(7) of the Code of Alabama, against the peace and dignity of the state of Alabama."
This indictment clearly put the appellant on notice that he is being charged with the capital offense of murder in violation of § 13A-5-40(a)(7), Code of Alabama 1975. The indictment states that a loan to Billy Rex Goodson is the consideration for the "contract for hire," and that the victim was struck with a vehicle resulting in her death as a result of this contract. Wilder v. State, 401 So.2d 151 (Ala.Cr.App.), cert. denied, 401 So.2d 167 (Ala.), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). See also, Ex parte State of Alabama v. Lundy, 539 So.2d 322 (Ala.1988).

II
This appellant contends that the trial court was in error in denying the appellant's motion for directed verdict and judgment of acquittal. The appellant contends that the State did not prove that the killing was intentional. The appellant also contends that there was no proof of any contract between Jimmy Lundy or Billy Rex Goodson to cause the death of Wanda Lundy.
This appellant was indicted and tried as a principal pursuant to § 13A-2-23(1), Code of Alabama 1975. This section states:
"A person is legally accountable for the behavior of another constituting a criminal offense, if with intent to promote or assist the commission of the offense:
(1) He procures, induces or causes such other person to commit the offense;..." (Cited in pertinent part herein.)
"The standard for appellate review of the sufficiency of the evidence in a case such as this one was aptly set out in Dolvin v. State, 391 So.2d 133 (Ala.1980).
"`"In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).
"`"[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir.1969); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969); The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir.1967):
"`"`Our obligation, therefore, is to examine the record to determine whether there is any theory of the *328 evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir.1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949.... The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is to examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged. McGlamory, 441 F.2d at 135 and 136.'"' (Emphasis in original.)
"391 So.2d at 137-38, quoting Cumbo v. State, 368 So.2d 871-874 (Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala.1979)."
Ex parte Robinette v. State, 531 So.2d 697 (Ala.1988).
The appellant argues that the State's case in chief reveals, "absolutely not one scintilla of evidence, that the death of the deceased was intentional." (Appellant's brief p. 127-128)
The following facts were presented to the trial jury in the case at bar:
Arley Burton testified that this appellant had continually asked Burton to either kill the appellant's wife or to have someone else kill her. This appellant even made a $500 down payment on the contract. Burton testified that the appellant even provided him with an itinerary of his wife's activities so that murder could be committed at a time when the appellant would have an alibi. (R. 316-321)
Burton testified that the appellant contacted him on many occasions suggesting possible times and locations. At one point, Burton went to the appellant's home so that he would know the layout for the purpose of staging a robbery. (R. 313-314)
Burton testified that these talks went on for about a year, and that six months before the death of Mrs. Lundy, the appellant asked for his money back. At this time the appellant stated that "he would get someone else to do the job." (R. 314-315)
Keython Hollingsworth, a co-worker of this appellant, also testified that this appellant had approached him about killing his wife. Hollingsworth testified that the appellant said, "I want somebody killed. I will give you five thousand dollars to find somebody to kill my wife, or you or anybody." (R. 276) Hollingsworth said that he did not reply and the appellant walked off. (R. 277)
The State also presented evidence of an extra-marital affair of the appellant. The appellant had dinner with this person the night before his wife's death.
On June 2, 1985, this appellant co-signed a $4,000 promissory note with Billy Rex Goodson, and Goodson was given a check for $4,000 which he cashed. Within three weeks of this transaction, the victim was killed while jogging when she was struck by a truck driven by Goodson.
Jogging was a part of the victim's daily routine, and the appellant had let her out of his vehicle on his way to work shortly before 5:30 a.m. on the date at issue.
The evidence presented to the jury concerning the alleged accident showed that Mrs. Lundy was hit near the western edge of the southbound lane of Highway 253 by a northbound vehicle. Evidence presented at trial supported the conclusion that the vehicle left the northbound lane and struck the victim at or near the western edge of the southbound lane. The driver of the vehicle, Goodson, did not stop to aid the victim. Goodson was also not under the influence of drugs or alcohol. There was no traffic on the highway at this time of the morning.
The appellant argues that after the accident the driver did many things which were inconsistent with a theory that the accident was intentional. Goodson went to the home of his uncle and said that he had hit someone and did not know how badly they were hurt. He also called the police department and reported the accident. However, Goodson's truck had already been seen coming from the direction of the accident site, where the body of the victim was lying in the middle of the road.
*329 The appellant testified in his own behalf and denied ever trying to hire someone to kill his wife. The co-defendant, Goodson, also gave testimony which, if believed, would tend to show that his hitting Mrs. Lundy was simply unfortunate and an unavoidable accident.
The above matters presented questions which were properly presented to the trial jury which resolved these issues against this appellant.
This court has carefully reviewed the record and found sufficient evidence to justify this conviction, and the submission of this cause to the jury.
"Circumstantial evidence may afford satisfactory proof of the corpus delicti in a murder prosecution, and, if facts are presented from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury." Hopson v. State, 352 So.2d 500, 502 (Ala.Cr.App.1976), aff'd, 352 So.2d 506 (Ala.1977)." Cumbo v. State, supra.
In the case at bar, the State clearly presented sufficient evidence from which the jury might have excluded every reasonable hypothesis except that of guilty beyond a reasonable doubt. The decision of the jury that the circumstantial evidence was sufficient to justify a conviction will not be overturned by this court.

III
Edger Goodson, the uncle of Billy Rex Goodson, testified at trial. The appellant asserts that the court erred in allowing into evidence hearsay statements made by Billy Rex Goodson during the State's case in chief.
Billy Rex Goodson arrived at the home of his uncle shortly after the accident. His uncle testified that Billy Rex Goodson knocked on the door and said, "I have run over somebody. I don't know how badly they are hurt and I want to call the police." (R. 519-520)
The State contends that there was no objection to this issue and, therefore, it was not preserved for review, but a careful reading of the record shows that there was an objection during an in camera hearing. At R. 501, Mr. Green, counsel for the appellant, objected to this issue. This objection was not before the jury, but the court states on R. 513, "You have made your objection and no one wants to go against the court before the jury, I understand that. So, your objection is well noted and reserved for appeal." Therefore, this issue is properly reviewable by this court.
In this cause the admission into evidence of this statement would be harmless error. It is well proven that Goodson's truck was the vehicle involved in the accident. Tissue and fibers were found on the undercarriage of the truck along with matching pieces of the grill found at the scene of the accident. Shortly after the accident, Goodson called the police himself and said that he was involved in an accident. He went to the police station where he was questioned and then taken to the hospital to test for the presence of drugs or alcohol. Thus, the admittance into evidence of this statement did not reveal any evidence which the state did not already have in its case in chief.
But, in this cause, the statement at issue is clearly a hearsay statement, but this statement was properly admitted as an exception to the hearsay rule. Construing the statement as a declaration against Goodson's interest provides one of three applicable exceptions to the hearsay rule in this cause.
The old view of the rule of generally excluding third party confessions in criminal cases is based on the "fear of opening a door to a flood of perjured witnesses falsely testifying to confessions that were never made." McCormick, Evidence § 278 (2d ed. 1977) (p. 674).
Earlier cases in Alabama follow this same trend. Kellam v. State, 36 Ala.App. 332, 55 So.2d 517 (1951) states, "Where another who was under indictment for the same offense took the stand to testify for the defendant but, upon being advised by the court of his constitutional rights, elected to claim privilege against self-incrimination and refused to testify, refusal to permit introduction into evidence of his written *330 declaration as to commission of the offense was not error."
But, in this case, the declaration is not an admission to a crime. It is an admission to being involved in an accident, which both the appellant and Goodson claim is an accident and not the intentional killing of Mrs. Lundy.
Rule 804(b)(3) of the Federal Rules of Evidence provides that a statement against interest is admissible when the declarant is unavailable. This includes statements that would subject the declarant to either criminal or civil liability, if a reasonable person in that position would not have made that statement, had they not believed it to be true.
The majority of cases have held that when a declarant refuses to testify upon the assertion of his privilege of self-incrimination the witness is unavailable. See C. Gamble, McElroy's Alabama Evidence, § 249.01(3) (3d ed. 1977) (p. 532).
In this instance, the declarant was unavailable. The declarant would have invoked his Fifth Amendment right. The court contacted Jerry Jackson, counsel for Billy Rex Goodson, and Jackson stated that, if his client were called to the stand, Goodson would invoke his Fifth Amendment privilege against self-incrimination.
Billy Rex Goodson would also have no reason to falsify this statement. Not only was this statement against Goodson's penal interest, subjecting him to criminal liability, but the statement was also against his pecuniary interest as well because he could have been sued in civil court.
Thus, this statement could have been properly admitted into evidence as a declaration against Goodson's interest. See 92 A.L.R.3d 1164, and 43 A.L.R.3d 1413.
The statement was also allowed into evidence as a statement made in furtherance of a conspiracy. This statement would be admissible as furthering the conspiracy of the death of Mrs. Lundy because the statements would be considered an attempt to conceal the actual nature of this incident as an accident.
Before statements are "admissible against the accused, proof must be made of the conspiracy." C. Gamble, McElroy's Alabama Evidence, § 195.03(2) (3d ed. 1977) (p. 411).
In this cause, evidence of the $4,000 note had already been admitted into evidence. Also the testimony of two other men whom this appellant approached with offers to kill his wife was already admitted into evidence. It should be further noted that "although proof of the conspiracy should be made before admittance against the accused of the co-conspirator's act or statement, subsequent proof of the conspiracy cures any error in prematurely admitting the act or statement." C. Gamble, McElroy's Alabama Evidence, § 195.03(2) (3d ed. 1977) (p. 411); see Foster v. State, 43 Ala.App. 435, 191 So.2d 523, cert. denied, 280 Ala. 713, 191 So.2d 527 (1966); Snoddy v. State, 20 Ala.App. 168, 101 So. 303 (1924). Thus, the statement would be admissible as a statement made by a co-conspirator in the furtherance of a conspiracy. See Bynum v. State, 348 So.2d 804 (Ala.Cr. App.1976), cert. quashed, 348 So.2d 828 (Ala.1977).
The evidence presented at trial shows that the home of Goodson's uncle was only a quarter mile to a half mile from the point of impact. This short duration in time, from the time of the accident vel non to the time that the statements were made, is also supported by the testimony of Officer Scott and that of Goodson's uncle. Officer Scott testified that he saw the truck at approximately 5:30 a.m. and that the body was approximately one mile from the site where the truck turned off Highway 253. Edger Goodson testified that his nephew, Billy Rex Goodson, knocked on his door at approximately 5:30 a.m.
Thus, the killing of Mrs. Lundy, and the statements of Edger Goodson, are all part of a continuing transaction in which only a few minutes elapsed. At some point after Goodson had turned off Highway 253 his truck broke down, but he was only a short distance from the home of his uncle. Goodson was at the home of his uncle within minutes of hitting Mrs. Lundy. Therefore, *331 the statements were also admissible as part of the res gestae.

IV
The appellant alleges that the trial court erred in not allowing the defense to ask a State witness about a prior rape conviction. Arley Burton testified while he was currently under indictment for a violation of the Alabama Controlled Substance Act. The appellant alleges that the witness was biased against him because he made a "deal" with authorities on the pending felony charge in exchange for his testimony.
The appellant claims that the witness was obviously biased because of three prior felony convictions and the current indictment against this witness would subject him to being tried under the Habitual Felony Offender Act. The appellant alleges that showing the facts and circumstances surrounding the rape conviction would show the importance of the "deal" and therefore show the extent of the bias.
We agree with the trial court in its finding that the circumstances surrounding the rape conviction would have no probative value whatsoever on any bias that the witness might harbor in this matter. The circumstances of the rape would have no bearing on the current indictment. The rape would be a felony offense when applying the Habitual Felony Offender Act. The only way in which this witness could benefit from the "deal" is to plea bargain for a lesser offense than the one with which he is presently charged. The prior rape charge is a felony and would be considered as such for purposes of the Habitual Felony Offender Act regardless of the surrounding circumstances. Moreover, "the law of Alabama in keeping with the general rule of this country, is that one generally cannot go beyond the name of the crime, the time and place of the conviction and the punishment." C. Gamble, McElroy's Alabama Evidence, § 145.01(11) (3d ed. 1977) (p. 305).
In this instance, the circumstances surrounding the "deal" were placed into evidence by the State. The jury was aware of these matters. Furthermore, the appellant's counsel was allowed to extensively question all such matters which would show bias as a result of the prior convictions or any "deals" which may have been made. The fact that the State questioned the witness about his pending indictment does not open the door for the appellant to impeach the witness by using the details concerning his prior convictions.

V
Arley Burton was allowed to testify over objection as to the substance of conversations that he allegedly had with the appellant. The appellant alleges that these conversations were too remote in point of time to be allowed into evidence because the conversations occurred approximately one and a half to two years before the death of Mrs. Lundy.
These assertions are contrary to the testimony of Arley Burton who testified that he was first contacted by the appellant a year and a half before the death of Mrs. Lundy. Conversations between the two continued for approximately one year until a time 6 months before the death of Mrs. Lundy. At this time, Burton testified that Lundy said, "he wanted his money back," and "he would get someone else." (R. 321)
Testimony by Burton showed that the appellant was planning the death of his wife 18 months in advance. Conversations between the two continued for a year until the appellant told Burton "he would get someone else." This testimony is also probative of the issue of whether the loan to Goodson was part of a contract to kill Mrs. Lundy. The appellant had tried for a year to have his wife killed, and 6 months prior to the death of his wife he indicated that he would continue his efforts to have her killed.
"Statements tending to show a specific intent on defendant's part to commit the robbery for which he is on trial are admissible." Roberson v. State, 339 So.2d 100 (Ala.Cr.App.), cert. denied, 339 So.2d 104 (Ala.1976); see Dockery v. State, 269 Ala. 564, 114 So.2d 394 (1959); Hall v. State, 208 Ala. 199, 94 So. 59 (1922).

*332 VI
The appellant contends that the taping of a transmitted conversation between him and Arley Burton constituted an illegal search and seizure because it was obtained without a warrant.
On the day of the arrest of the appellant, Arley Burton was wired for transmission and sent by the District Attorney's Office to the home of the appellant. The conversation which ensued took place in the appellant's yard.
This court has already held in Hammond v. State, 354 So.2d 280 (Ala.Cr.App.), cert. quashed, 354 So.2d 294 (Ala.1977), cert. denied, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978), and Evers v. State, 434 So.2d 804 (Ala.Cr.App.1982), rev. on other grounds, Ex parte Evers, 434 So.2d 813 (Ala.1983), that "the failure to obtain a warrant to tape conversations did not breach any constitutional duty as to preclude admission of the tape into prosecution."
The conversation in Hammond, supra, occurred in a truck stop, and the conversation in Evers, supra, occurred in the defendant's medical clinic. The appellant seeks to distinguish these cases from the one at bar because this taping occurred at the appellant's residence, more specifically the yard of the appellant's home.
"The prevailing view in Alabama, which is in accord with the most recent United States Supreme Court decisions, is that a search warrant is not required where, as here, the person wearing the `body mike' consents to the taping of his conversations. Hammond v. State, supra, and cases therein cited [especially, United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) ]." Evers v. State, supra.
"An accused must assume the risk that his confidant, in this case a `bugged' informant, might be reporting to the police, Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); United States v. White, supra. This is no less true where, as here, the conversation is not initiated by the accused, is not prearranged, and takes place in the accused's regular place of business." Evers v. State, supra.
This court fails to see the distinction between the facts in this cause and the facts of prior decisions by this court. Moreover, testimony was offered at trial of the contents of this conversation by C.J. Cox, who was listening to the conversation, and by Arley Burton. A review of the record shows no variance in the substance of the conversation, and the appellant does not contest the testimonies of either as being inaccurate.
Thus, the admission of the tapes was proper under the holdings of Hammonds, supra; and Evers, supra. See also Bynum v. State, 348 So.2d 804 (Ala.Cr.App.1976), cert. quashed, 348 So.2d 828 (Ala.1977).

VII
The appellant alleges that the trial court improperly overruled his motion for new trial. The appellant states 65 grounds for his motion for new trial, but only asserts 4 in brief. Although the appellant raises numerous other grounds in support of his argument that the trial court erred in denying his motion for new trial, he failed to cite any legal authority in support of these propositions. Pursuant to the opinions of this court in Johnson v. State, 500 So.2d 494 (Ala.Cr.App.1986), and Vinzant v. State, 462 So.2d 1037 at 1039 (Ala.Cr.App. 1984), and cases cited therein, such arguments will be deemed waived.

A
The appellant contends that the State failed to comply with the trial court's discovery order and specifically failed to comply with Rule 18 of the Temporary Rules of Criminal Procedure and with the requirements set out in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The appellant contends that the State failed to disclose that Albert Pinion had given an oral statement to Investigator C.J. Cox stating that he had no knowledge of any statements that this appellant made. The appellant states that this is relevant because Investigator C.J. Cox testified that *333 he had told the appellant that Earl Pinion had much information concerning the case.
"To establish a Brady violation," the appellant "must demonstrate (1) that the prosecution suppressed the evidence; (2) that the evidence was favorable to him or exculpatory; and (3) that the evidence was material." Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
The appellant has failed to prove the materiality of this statement. Pinion did not testify at trial, thus, this non-disclosure has no relevance whatsoever. The Supreme Court of the United States has held that, "the suppression of impeachment or other exculpatory evidence amounts to constitutional error requiring reversal only if such evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985).
Thus, this non-disclosure would not violate the requirements set out in Brady, supra.
The appellant also asserts one other nondisclosure matter. The appellant states that the defense was unaware that Roy Craig had been told that if he was holding any information back he could be charged with conspiracy. The appellant claims that the non-disclosure of this information severely prejudiced the defense's cross-examination of this witness.
Craig testified again at the motion for new trial. During this testimony, Craig testified that after he was told that he could be charged with conspiracy if he was holding back evidence the following occurred:
"Well, I got nervous, and I just went to thinking hard of what I might have said or what conversation I may have said, or what possibly I could have said, you know. And the only conversation I knew was the one I said in court at the time I was here. And I told him [Cox] that." (R. 1426)
Craig then testified as he did at trial that he thought that the comments made by the appellant about having his wife killed were a joke. (R. 364-66, 1426-27)
At the hearing on the motion for new trial, the witness's testimony still maintained that he had a conversation with the appellant, and at least jokingly in Craig's view talked about getting rid of his wife. The appellant fails to show how he would have been prejudiced by the non-disclosure, and we find that its suppression does not undermine the confidences of the outcome of the trial. United States v. Bagley, supra; Ex parte Kennedy, supra, and cases cited therein.

B
The appellant claims that the testimony of Burton, Hollingsworth, and Craig was too remote and should not have been admitted into evidence. This issue has already been addressed in part in Issue V of this opinion.

C
The appellant contends that the evidence, when taken as a whole, does not support the verdict and that the verdict is against the great weight of the evidence.
This court has carefully reviewed this record and finds sufficient evidence to sustain this conviction. We further find that the verdict of the trial court is not against the great weight of the evidence. The appellant presented conflicting testimony to rebut the State's evidence which was properly presented to the jury. These matters were resolved against this appellant.

VIII
The appellant contends that the judge commented on the evidence which bolstered the State's case in chief.
First, the appellant claims that the statement by the trial court, "it is undisputed that the victim had been struck and killed by a motor vehicle," removed one of the elements alleged in the indictment. Billy Rex Goodson testified at trial that he ran over the victim, and the evidence on this point was undisputed at trial. Moreover, the appellant failed to object to this statement *334 at trial, thus, it is not properly preserved for review by this court. Bell v. State, 466 So.2d 167 (Ala.Cr.App.1985), and cases cited therein.
The second improper comment on the evidence alleged by the appellant occurred in referring to the transcript prepared by the District Attorney's Office of the Lundy/Burton wired conversation. The court stated, "All right ladies and gentlemen of the jury, you are now in possession of the transcript." (R. 494) Again the appellant failed to object, thus, this issue is not properly preserved for review by this court. Bell v. State, supra; McMullin v. State, 442 So.2d 155 (Ala.Cr.App.1983).
The final improper comment asserted by this appellant vouched for the accuracy of the transcript. The statement in question was made during a voir dire examination at R. 487. This statement was not before the jury, thus, it could not have bolstered the credibility of the evidence in any way.

IX
The appellant asserts that the testimony of Harlan Farrer was not relevant because he is an employee of Winfield State Bank and the indictment charges that the promissory note was from the Citizens Bank of Winfield. The appellant therefore contends that the testimony does not prove any charge in the indictment.
The Supreme Court of Alabama has held that no fatal variance existed. Ex parte State of Alabama v. Lundy, 539 So.2d 322 (Ala.1988). Thus, the testimony would be relevant on the issue of a consideration alleged in the indictment and was properly admitted into evidence.
No objections were made on the hearsay grounds which the appellant now asserts in this matter. Hence, the hearsay grounds are not preserved for review by this court. Hassell v. State, 342 So.2d 1357 (Ala.Cr. App.1977); Bell v. State, supra.

X
The appellant contends that the court erred in its refusal of the appellant's requested written charges.
This court is not in agreement with the appellant. In this cause, the State proved a prima facie case, thus charges A, B, and C, all of which were requests for affirmative charges, were properly denied. (R. 1618)
"Refusal to give written requested charges was not error when charges were either thoroughly covered in trial court's oral charge, or inapplicable or abstract, or an incorrect statement of the law." Sasser v. State, 494 So.2d 857 (Ala.Cr.App.1986); Oates v. State, 375 So.2d 1285 (Ala.Cr.App. 1979); § 12-16-13, Code of Alabama 1975.
This court has reviewed the trial court's oral charge to the jury and finds no error. Furthermore, we find the requested jury charges in question were properly refused because they were substantially covered in the oral charge. (R. 1378-1400) Code, supra.
We have carefully reviewed this record and find no error. For reasons herein stated, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.

ON REHEARING
TYSON, Judge.
Each member of this court has carefully considered the appellant's application for rehearing and brief attached, including the "Amended Application for Rehearing", and is of the opinion that the same is due to be and is, hereby, denied without further opinion.
OPINION EXTENDED, APPLICATION OVERRULED.
All the Judges concur.