This is an appeal from the denial of a petition for post-conviction relief.
In 1985, Jimmy Lundy was convicted and sentenced to life imprisonment without parole for the intentional killing of his wife, Wanda Lundy, by procuring Billy Rex Goodson to strike her with a vehicle pursuant to a contract. This conviction was ultimately affirmed on appeal. Lundy v. State, 539 So.2d 321
(Ala.Cr.App. 1987), rev'd, 539 So.2d 322 (Ala. 1988), on remand, 539 So.2d 324 (Ala.Cr.App. 1988).
In May 1989, Lundy filed a pro se petition for post-conviction relief under Rule 20, A.R.Crim.P.Temp. Pursuant to Rule 20.7(a), the State of Alabama filed a response to the petition. Lundy then filed a response to the State's response, which he subsequently amended. Counsel was then appointed to represent Lundy.
After an evidentiary hearing, the circuit court denied the petition and issued a written memorandum opinion on December 7, 1989. Lundy appealed pro se from the denial of his petition.
 I
Lundy is procedurally barred from raising the following issues: 1) alleged material variances in the indictment, 2) the prosecutor's failure to disclose allegedly exculpatory evidence prior to trial, 3) the prosecutor's comments during final argument to the jury, and 4) sufficiency of the evidence to support the jury verdict.
Rule 20.2(a), A.R.Crim.P.Temp, provides in pertinent part: "A petitioner will not be given relief under this rule based upon any ground . . . (3) [w]hich could have been but was not raised at trial . . .; or (4) [w]hich was raised or addressed on appeal . . ., or (5) [w]hich could have been but was not raised on appeal."
(1) The indictment's misidentification of the bank where Lundy co-signed a note on behalf of Goodson was addressed on appeal. Lundy v. State, 539 So.2d 321 (Ala.Cr.App. 1987), rev'd, 539 So.2d 322 (Ala. 1988), on remand, 539 So.2d 324
(Ala.Cr.App. 1988). The miscitation of a Code section in the indictment could have been but was not raised on appeal.
(2) The prosecutor's failure to disclose that Investigator C. J. Cox allegedly coerced Roy Craig into testifying against Lundy was specifically addressed on appeal. Lundy v. State,539 So.2d 324 (Ala.Cr.App. 1988). The prosecutor's failure to disclose that Cox allegedly coerced a "Mrs. Lucas" could have been but was not raised on appeal. *Page 401 
The allegation that the prosecutor failed to disclose that Cox coerced certain unnamed witnesses and certain unnamed persons who worked with Lundy is insufficient on its face to entitle Lundy to relief. Rule 20.6(b), A.R.Crim.P.Temp., provides that the petition "must contain a clear and specific statement of the grounds upon which relief is sought,including full disclosure of the factual basis of thosegrounds" (emphasis added). Because the identity of those persons was not fully disclosed in the petition, as amended, the court will not review this allegation.
(3) There was no objection interposed at trial and no issues raised on direct appeal regarding the allegedly improper comments which the prosecutor made during final argument to the jury.
(4) The allegation that there was no evidence to support the jury's verdict that the killing was intentional was specifically addressed on appeal. Lundy v. State,539 So.2d 324, 327-29 (Ala.Cr.App. 1988).
 II
Lundy contends that because Billy Ray Goodson received only a manslaughter conviction for the death of Wanda Lundy, Lundy cannot logically be convicted of the capital offense of intentionally procuring Goodson to cause her death. Goodson's manslaughter conviction occurred after Lundy's case was on appeal and will be treated as a newly discovered fact warranting review.
Lundy's argument is based upon the fallacious premise that Lundy, as a mere "accessory," can receive no more punishment than his "principal" Goodson or be found guilty of a greater offense than his principal.
Lundy was indicted and tried as a principal pursuant to §13A-2-23(1), Code of Alabama 1975, which section continues the long-recognized abolition of the distinction between principals and accessories in Alabama. See Faircloth v. State,471 So.2d 485 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493 (Ala. 1985). Because Lundy was tried as a principal, the jury which convicted him of intentionally procuring Goodson to cause the death of Lundy's wife could not be bound by the jury which convicted Goodson of manslaughter. See Ex parte Williams,383 So.2d 564 (Ala. 1980), cert. denied, 449 U.S. 995,101 S.Ct. 534, 66 L.Ed.2d 293 (1980), citing Bridges v. State,48 Ala. App. 249, 263 So.2d 705 (1972).
 III
Lundy claims that he was denied effective representation of counsel because counsel failed to call certain witnesses at trial and to preserve for appeal or make objections to certain matters during discovery and at trial.
Lundy was represented at trial and on direct appeal by William Baxter Fite and Charles Harry Green. Lundy alleges that Fite and Green rendered ineffective assistance of counsel because 1) they failed to move to have the indictment quashed based on a material variance therein; 2) they failed to call certain character and rebuttal witnesses in behalf of Lundy at trial; and 3) they failed to object to the prosecutor's allegedly improper comments in closing argument.
To prevail on a claim of ineffective assistance of counsel, Lundy "must show that counsel's performance was deficient:"
 "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,2064, 80 L.Ed.2d 674 (1984).
We agree with the circuit court that, under the test ofStrickland v. Washington and under the particular circumstances *Page 402 
of this case, Fite and Green did not render ineffective assistance of counsel in representing Lundy at trial and on direct appeal.
(1) We reject Lundy's claim that Fite and Green should have moved to quash Count II of the indictment because of a miscitation of a Code section.
It is undisputed that Count II of the indictment filed against Lundy on February 14, 1985, in the Marion County Circuit Court contains two errors: 1) the murder-for-hire Code section — § 13A-5-40(a)(7), Alabama Code (1975) — is miscited as "§ 13A-4-40(7)"; and 2) Winfield State Bank, the bank where Lundy co-signed a note on behalf of Goodson, is misidentified as "Citizen's Bank of Winfield."
Although Count II of the original indictment filed against Lundy in the circuit court on September 25, 1984, correctly cited the murder-for-hire Code section, we shall view the facts in the light most favorable to Lundy and shall address the constitutionality of the indictment as drafted with the miscitation.
Lundy contends that this miscitation, when coupled with the indictment's misidentification of the bank where he co-signed a note on behalf of Goodson, was a material variance which violated his constitutional rights.
On Lundy's direct appeal, the Alabama Supreme Court held that the inclusion of the name of the bank within the language of the indictment was mere surplusage, because the identification of the bank was not a material allegation of the charged offense or murder for hire. Ex parte State, 539 So.2d 322, 324
(Ala. 1988).
Miscitation of a Code section in an indictment will also be treated as mere surplusage where the indictment otherwise states an offense and no actual prejudice to the defendant is shown. Ex parte Bush, 431 So.2d 563, 564 (Ala. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983), cited with approval in Baker v. State, 472 So.2d 700, 702
(Ala.Cr.App. 1985).
On Lundy's direct appeal, this Court held that the indictment clearly put Lundy on notice that he was being charged with the capital offense of murder for hire: "The indictment states that a loan to Billy Rex Goodson is the consideration for the 'contract for hire,' and that the victim was struck with a vehicle resulting in her death as a result of this contract."Lundy v. State, 539 So.2d 324, 327 (Ala.Cr.App. 1988).
Hence, because the indictment clearly put Lundy on notice of the capital offense with which he was charged and because the identification of the bank was not a material allegation, the miscitation of the Code section was mere surplusage and did not constitute a material variance. Fite and Green did not, therefore, render ineffective assistance of counsel in failing to object to the indictment on this ground.
(2) We agree that the failure of Fite and Green to call character witnesses on behalf of Lundy was sound trial strategy.
Lundy alleged that he provided Fite and Green with a list of 40 persons who could be called as character witnesses on his behalf at trial, and that counsel's decision not to call any of these character witnesses prejudiced him. Lundy also contends that his daughter, Cindy Logan, should have been allowed to testify to rebut the prosecutor's accusation that she wanted her father prosecuted for the murder of her mother.
The list of 40 names, which was prepared by Cindy Logan and introduced into evidence in the circuit court hearing, contains the following notation beside the first two names: "knows about Eunice in house '77." The circuit court found this notation fatal to Lundy's argument:
 "[H]ad petitioner's general character been put at issue, the state could have cross-examined the character witnesses re: rumors and reports circulating in the Hamilton community concerning petitioner's relationship with Eunice Hughes, thus, arguable supplying petitioner with a motive to do away with his wife.
 "The [circuit judge] had foreclosed the state in independently developing this line of inquiry in pretrial rulings. It is undisputed that good character witnesses would have been impeached by the *Page 403 
state regarding defendant's alleged improprieties with Ms. Hughes. . . .
 "[The circuit judge] recalls much pretrial discussion regarding this issue and the state's contention that 'good character' evidence would provide a fertile source for impeaching material, supplying a motive for the killing.
 "I conclude that counsel's decision not to put character evidence on in the case was wise and a prudent decision."
As further support for this contention, Lundy attached 54 affidavits to his petition, as amended, and argued that Fite and Green could have called any of these persons to testify in his behalf at trial. It is interesting to note that only eight of the affiant's names actually appeared on the list of 40 names given to Fite and Green before the trial. Fifty-three affidavits contained identical averments, and eight of the affiants are relatives of Lundy. In weighing the credibility of these affidavits, this court has considered the fact that the state was able to cross-examine only one affiant, Cindy Logan, at the hearing below.
Fite and Green made an adequate investigation into possible mitigating evidence before Lundy's trial. Their performance was not made deficient by the fact that Lundy has now come up with additional mitigation. See High v. Kemp, 819 F.2d 988, 994
(11th Cir. 1987), cert. denied, ___ U.S. ___, 109 S.Ct. 3264,106 L.Ed.2d 609 (1989).
The affidavits, moreover, are weak character evidence at best and do not establish a reasonable probability that, but for the failure of Fite and Green to call these witnesses, the outcome of his trial would have been different. In fact, had any of these witnesses been called to testify, the danger that on cross-examination they would reveal testimony concerning the alleged illicit relationship of Lundy with Eunice Hughes would have reinforced a possible motive for Lundy's actions instead of strengthening his credibility. This danger made counsel's decision to forgo a litany of character witnesses, including Lundy's daughter, who made the notation about Eunice Hughes on the witness list, the most prudent strategic choice. SeeTucker v. Kemp, 776 F.2d 1487, 1491 (11th Cir. 1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986) (counsel's decision to rely on defendant's testimony rather than offering testimony of defendant's family reasonable strategic choice).
As a corollary argument, Lundy contends that Fite and Green did not conduct a sufficient investigation of state's witness Keython J. Hollingsworth to obtain rebuttal testimony undermining his credibility. Lundy argues that had a proper investigation been conducted, his attorneys would have discovered that either Steve Green or Jim Davis could have rebutted Hollingsworth's testimony. In support of this argument, Lundy included the affidavit of Steve Green. Neither Steve Green nor Jim Davis was present or testified at the circuit court hearing.
Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, "counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation." Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983) cert. denied, 467 U.S. 1219, 104 S.Ct. 2667,81 L.Ed.2d 372 (1984).
Given the danger that Steve Green or Jim Davis would be asked on cross-examination about the alleged illicit affair, we conclude that counsel's investigation of possible mitigating evidence was sufficient and that their decision to forgo testimony from residents of the small town where the offense occurred was a sound prudent choice. See Lightbourne v. Dugger,829 F.2d 1012, 1025-26 (11th Cir. 1987), cert. denied,488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988) (citing Mitchell v.Kemp, 762 F.2d 886, 889 (11th Cir. 1985), cert. denied,483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987)).
(3) Lundy complains that Fite and Green were ineffective because of their failure to object to certain comments made by the prosecutor in his closing argument to the jury.
The prosecutor's comment that the state's witnesses were sworn to tell the *Page 404 
truth and did tell the truth was permissible argument by counsel. Likewise, the prosecutor's comment that Lundy "did it" and "meant to do it" was not the prosecutor's opinion or belief that Lundy was guilty, but rather indicated that the evidence showed the guilt.
Our review of the entire record and of the context in which these remarks were made convinces us that the prosecutor was merely requesting the jurors to return a verdict based on the facts under the applicable law as they had sworn to do.
Even if, arguendo, these comments be taken as improper, we would note that not every failure to object to argument constitutes ineffective assistance of counsel. See Fleming v.Kemp, 748 F.2d 1435, 1450 (11th Cir. 1984), cert. denied,475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986). The standard for attorney performance is reasonableness, and the performance of Fite and Green was not "outside the wide range of professionally competent assistance." Strickland v. Washington,466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).
Lundy complains, moreover, that the following portion of the prosecutor's closing argument constitutes "the most devastating statement ever presented by a prosecuting attorney:"
 "It is kind of ironic, you know, you remember when Mr. Fite asked Jimmy Lundy on the stand about seeing his wife for the last time and dropping her off at that road; how that patois got in his voice, waviness? Show that he really loved her, because when she got out to jog, he always kissed her on the forehead.
 "And of course, since then, Mr. Fite has thought about it, how would that sound to that jury? And he mentioned something about a kiss of death. And you know, it is kind of interesting. I had not thought about it until he mentioned that. I really had not. Not to any great extent.
 "But it is kind of ironic. And you know, a kiss does not necessarily signify affection. I think of one interesting instance like that, over in the New Testament. And I believe it's [in the] latter part of Matthew. And Jesus had gone, they just had the last supper and they had gone out into the Garden of Gethsemane to pray and be alone. And after some period of time, one of his closest confidants, one of his trusted disciples came into the garden and planted a kiss on him. Sure Judas was saddened later on. But what was the intent of that kiss?"
This issue is controlled by the holding of the Alabama Supreme Court in the case of Poole v. State, 292 Ala. 590,298 So.2d 89 (1974). In the Poole case, the prosecutor referred to Judas in connection with the defendant and his good character evidence. The Supreme Court, citing the case of Wright v.State, 279 Ala. 543, 188 So.2d 272 (1966), held that there was no prejudicial error in referring to Judas and that counsel's argument should not be so confined as to preclude illustrative references to biblical teachings. 292 Ala. at 592,298 So.2d at 91.
We have considered each allegation of counsel's ineffectiveness both at trial and on appeal. We have also considered the cumulative effect of all of those alleged errors. We conclude that Lundy has failed to prove that Fite and Green were ineffective under the test of Strickland v.Washington. In particular, Lundy has not shown that but for counsel's alleged professional errors the result of the proceeding would have been different.
The findings of the circuit court are reasonable and are supported by the record. Our review of both the proceedings in the petition for post-conviction relief and those at trial convince us that Lundy received a fair trial and was not denied effective assistance of counsel either at trial or on appeal.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, Retired Supreme Court Justice, serving as a Judge of his Court, and his opinion is adopted as that of this court. *Page 405 
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.